**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DIVOC 91, LLC,**<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**NATURAL ESSENTIALS, INC.,** *et al.*,<br><br>　　　　　　　　Defendant. | Civil Action No. 22-249 (ZNQ) (LHG)<br><br>**OPINION** |

**QURAISHI, District Judge**

　　**THIS MATTER** comes before this Court on a Motion to Stay the Case as to Claims Involving Defendant Natural Essentials, Inc. and to Compel Arbitration ("the Motion," ECF No. 4) filed by Defendant Natural Essentials, Inc. ("Natural Essentials"). Natural Essentials filed a brief in support of the Motion, ("Moving Br.", ECF No. 4-2), along with a declaration of Natural Essential's Vice President of Operations, Bryan Pellegrino (ECF No. 4-3). Plaintiff Divoc 91, LLC ("Plaintiff") opposed the Motion ("Opp'n Br.", ECF No. 12), along with a declaration of Plaintiff's sole member, Joseph Giamanco, Jr. ("Giamanco Decl.", ECF No. 12-1), and a declaration of a managing partner of Maho Partners LLC, Michael Dolan ("Dolan Decl.", ECF No. ECF No. 12-2). Natural Essentials replied (ECF No. 14). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, Defendant's Motion to Stay and to Compel Arbitration will

1

be DENIED WITHOUT PREJUDICE, and the parties will be ordered to conduct limited discovery on the issue of arbitrability.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a Complaint ("Compl.", ECF No. 1-1) against Natural Essentials, seeking a stay of the arbitration proceedings between it and Natural Essentials.[1] (Compl. ¶¶ 74–79.)

Plaintiff attaches a purchase order, dated July 31, 2020, to the Complaint. ("First Purchase Order", *Id*. at Ex. A.) In the First Purchase Order, Plaintiff agreed to provide Natural Essentials personal protective equipment ("PPE"), including 200,000 boxes of nitrile gloves, for a cost of $2,350,000.00 by August 30, 2020. (*Id*. ¶¶ 28, 29.) The First Purchase Order did not contain an arbitration clause. (*Id*. ¶ 31.) Plaintiff additionally attaches a second, unsigned purchase order to the Complaint ("Second Purchase Order", *Id*. at Ex. B). Plaintiff alleges that Natural Essentials attached the Second Purchase Order in connection with its demand for arbitration. (*Id*. ¶ 32.) The Second Purchase Order included an arbitration clause. (Second Purchase Order ¶ 23.)

Plaintiff entered into an escrow agreement with O'Niell & Partners, LLC ("O'Niell") whereby O'Niell agreed to act as Plaintiff's escrow agent in connection with the funds to be escrowed concerning Plaintiff's anticipated contracts to sell PPE. (Compl. ¶ 35, Ex. C.) Natural Essentials thereafter deposited $2,350,000.00 with O'Niell for Plaintiff to procure the PPE. (*Id*. ¶ 38.)

Plaintiff entered into a purchase agreement (the "Purchase Agreement", *Id*. at Ex. D) with Defendant CSS Investments, Inc. ("CSS") on August 3, 2020 for Plaintiff to procure the PPE for

---

[1] The Complaint additionally contains allegations in Counts Two through Eight against Defendants CSS Investments, Inc. Artic Health Solutions Viet Nam Co., Ltd., Saigon Joint Stock Commercial Bank, Jane and John Does 1-10 and ABC Corporations 1-0. These Defendants, however, are not party to the instant Motion.

a purchase price of $2,250,000.00. (*Id.* ¶¶ 39, 40.) The Purchase Agreement permitted Plaintiff to cancel the agreement in the event the PPE was not loaded on an air carrier within five days of the execution of the Purchase Agreement. (*Id.* ¶ 42.) The Purchase Agreement did not contain an arbitration clause. (*Id.* ¶ 43.) CSS then entered into a contract with Defendant Artic Health Solutions Viet Nam Co., Ltd. ("Artic Health") on August 10, 2020 to procure the PPE. (*Id.* ¶ 44.) Plaintiff thereafter authorized O'Niell to wire $2,250,000.00 to CSS to procure the PPE, leaving $100,000 in escrow. (*Id.* ¶ 45.) CSS transferred the funds to Artic Health, which then deposited the funds into its account with Defendant Saigon Joint Stock Commercial Bank ("Saigon Bank"). (*Id.* ¶ 46.) Plaintiff alleges that upon information and belief, the alleged contract between CSS and Artic Health did not contain an arbitration clause. (*Id.* ¶ 47.)

CSS was unable to procure the PPE from Artic Health by August 28, 2020. (*Id.* ¶ 48.) Plaintiff sent a notice cancelling the Purchase Agreement. (*Id.* ¶ 49.) In connection with the cancellation, Plaintiff demanded the $2,250,000.00 it previously wired to CSS for the purchase of the PPE. (*Id.* ¶ 50.) CSS then terminated its contract with Artic Health on September 17, 2021. (*Id.* ¶ 51.)

Artic Health agreed to refund CSS the $2,250,000.00, but only actually refunded $640,000.00 to CSS. (*Id.* ¶¶ 52, 53.) CSS refunded the $640,000 to Natural Essentials. (*Id.* ¶ 54.) Saigon Bank refused to refund the remaining $1,610,000.00 to Artic Health. (*Id.* ¶ 55.) Natural Essentials demanded Plaintiff to refund the monies it had paid for the procurement of the PPE. (*Id.* ¶ 56.) Plaintiff, however, was only able to refund the $100,000 remaining in its escrow. (*Id.* ¶ 57.)

On August 2, 2021, Natural Essentials filed a demand for arbitration with the American Arbitration Association against Plaintiff, relying on the unsigned Second Purchase Order. (*Id.*

¶ 60.) On January 14, 2022, Plaintiff filed a Complaint in the Superior Court of New Jersey, Monmouth County against Natural Essentials to stay the arbitration proceedings. (ECF No. 1-1.) Defendants removed the action to this Court on January 19, 2021. (ECF No. 1.) On September 24, 2021, Defendant filed the instant Motion to Compel Arbitration and Stay Proceedings. (ECF No. 4.) Plaintiff opposed the Motion, arguing that it did not agree to arbitration. (Opp'n Br. at 17.)

## II.     JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

## III.     LEGAL STANDARD

"The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts are authorized to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Additionally, under § 3 of the FAA, parties may "apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir.

4

2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). To conduct this inquiry, the court shall apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### IV.   DISCUSSION

In determining whether a valid arbitration agreement exists, a court must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint[.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). However,

> [w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citations omitted). In such circumstances, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." *Ross v. CACH, LLC*, Civ. No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015). Afterwards, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a [Rule 56,] summary judgment standard." *Guidotti*, 716 F.3d at 776.

Here, while the Complaint references the *existence* of an arbitration agreement within the Second Purchase Order (Compl. ¶ 34), the Complaint makes no reference to whether the parties

5

*agreed* to arbitration. Plaintiff's sole member, Joseph Giamanco, Jr. ("Giamanco"), declares that he never signed any document agreeing to arbitrate any disputes arising out of the Purchase Order. (Giamanco Decl. ¶ 20.) Giamanco indicates that he entered into an oral contract with Maho Partners, LLC ("Maho") to procure PPE for distributors and to share any commissions on any contracts obtained with such distributors. (*Id*. ¶ 5.) Michael Dolan ("Dolan"), a managing partner of Maho, identified Natural Essentials as a potential customer and negotiated the terms of a contract with Natural Essentials to procure 200,000 boxes of nitrile gloves. (*Id*. ¶¶ 8, 9.) Giamanco received a purchase order from Dolan. (*Id*. ¶ 14.) Giamanco contends that Dolan did not inform him that the contract was subject to terms and conditions, nor did the Purchase Order contain any attached terms or conditions. (*Id*. ¶¶ 15, 18.)

Given that the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion. *See Guidotti*. 716 F.3d at 774. As the Third Circuit instructed in *Guidotti*, in this type of scenario, "the motion to compel arbitration *must* be denied pending further development of the factual record." *Id.* (emphasis added); *see, e.g., Sauberman v. Avis Rent a Car Sys., L.L.C*., Civ. No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying a motion to compel arbitration and ordering limited discovery where the complaint did not establish on its face that the parties agreed to arbitrate); *Torres v. Rushmore Service Center, LLC,* Civ. No. 18-9236, 2019 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (same); *Hughes v. Kolaras*, Civ. No. 13-0057, 2013 WL 5797735, at *7 (D.N.J. Oct. 28, 2013) (denying a motion to dismiss without prejudice in part because arbitrability was not apparent on the face of the complaint). Thus, this Court will deny Natural Essential's motion without prejudice, and order the parties to conduct

6

limited discovery on the issue of arbitrability. Afterwards, Natural Essentials may file a renewed motion to compel arbitration, which this Court will review under a Rule 56 standard.

## V.     CONCLUSION

For the reasons set forth above, Natural Essential's Motion to Compel Arbitration and Stay Proceedings will be DENIED WITHOUT PREJUDICE, and the parties will be ordered to conduct limited discovery on the issues of arbitrability over the next 45 days. Defendant will be permitted to file any renewed motion to compel arbitration by no later than May 12, 2023. An appropriate order will follow.

Date: **March 24, 2023**

                                                                    s/ Zahid N. Quraishi
                                                                    **ZAHID N. QURAISHI**
                                                                    **UNITED STATES DISTRICT JUDGE**