**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DIVOC 91, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**NATURAL ESSENTIALS INC.,** *et al.*,<br><br>Defendants. | Civil Action No. 22-249 (ZNQ) (JBD)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before this Court on a Renewed Motion to Compel Arbitration and for Sanctions ("the Motion," ECF No. 57) filed by Defendant Natural Essentials Inc. ("Natural Essentials" or "Defendant"). Defendant filed a brief in support of the Motion, ("Moving Br.," ECF No. 57-1), along with the declarations of James E. Von Der Heydt ("Heydt Decl.," ECF No. 57-2) and Bryan Pellegrino ("Pellegrino Decl.," ECF No. 57-3). Plaintiff Divoc 91, LLC ("Plaintiff") submitted an opposition brief ("Opp'n Br.," ECF No. 60), along with the declarations of Lawrence W. Luttrell ("Luttrell Decl.," ECF No. 60-1), Joseph Giamanco, Jr. ("Giamanco Decl.," ECF No. 60-2), and Michael Dolan ("Dolan Decl.," ECF No. ECF No. 60-3). Defendant filed a reply brief ("Reply Br.," ECF No. 61) and a second declaration of James E. Von Der Heydt ("Heydt Reply Decl.," ECF No. 61-1). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78

1

and Local Civil Rule 78.1.[1]  For the reasons outlined below, the Court will GRANT IN PART and DENY IN PART Defendant's Renewed Motion to Compel Arbitration and for Sanctions.

I. **BACKGROUND**

    A. **FACTUAL BACKGROUND**

The Court gleans the following facts from the parties' submissions filed in connection with the Motion.[2]

In July 2020, Defendant's Vice President of Operations, Bryan Pellegrino ("Pellegrino") negotiated a contract with Michael Dolan ("Dolan"), managing partner of Maho Partners LLC ("Maho"),[3] to procure $2,350,000 worth of personal protective equipment ("PPE").  (Pellegrino Decl. ¶¶ 4–6; Giamanco Decl. ¶ 9.)  Plaintiff's sole member, Joseph Giamanco ("Giamanco"), was not involved in the negotiations, only Dolan.[4]  (Pellegrino Decl. ¶ 5; Giamanco Decl. ¶ 10.)  Dolan sent a purchase order to Defendant on July 30, 2020 (the "First PO") that listed Natural Essentials as the buyer and Plaintiff as the seller of the PPE.  (*See* First PO, Pellegrino Decl., Ex. 2 & Dolan Decl., Ex. B.)  Dolan's cover email for the First PO proposed price terms for the contract, including a proposed profit-sharing arrangement between Plaintiff, Dolan, and Defendant.[5]  ("Cover Email," Pellegrino Decl., Ex. 2 & Dolan Decl., Ex. A.)  Attached to the First PO was a list of terms and conditions, including a clause requiring "[a]ny controversy" related to the purchase order to be

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.
[2] Given that the parties are familiar with the factual background of this case, the Court herein recites only the facts relevant to the instant Motion.
[3] Maho's business is to "assist on limited PPE transactions and to procure PPE for resale by distributors of such equipment."  (Dolan Decl. ¶ 4.)
[4] Dolan was not employed directly by Plaintiff.  Rather, pursuant to an oral arrangement, Giamanco and Dolan agreed that Dolan, through his business Maho, would help Plaintiff procure PPE for distributors, and that they would share any commissions.  (Giamanco Decl. ¶¶ 4–6; Dolan Decl. ¶¶ 2, 4, 7–8.)
[5] "River" in the Cover Email refers to River Capital Group Holdings, which Plaintiff does business as.  (Compl. at 1.)  The Court notes the minor inconsistency between the first unnumbered paragraph of the Complaint -and the caption for this matter, which identifies Plaintiff's d/b/a as "Riverview Capital Holdings Group."

settled by arbitration. (First PO § 23.) The First PO stated that it was subject to the attached terms and conditions. (*Id.* at 1.) The parties did not sign the First PO. (*Id.* at 4.)

The next day, in response to the First PO, Natural Essentials sent another purchase order to Dolan, again listing Plaintiff as the seller of PPE and Defendant as the buyer. ("Second PO," Pellegrino Decl., Ex. 3 & Dolan Decl, Ex. C.) The Second PO contains a signature, but no attached terms and conditions and no reference to arbitration. (*See* Second PO.)

On August 3, 2020, Natural Essentials paid Plaintiff the full amount it owed under the contract.[6] (Pellegrino Decl., Ex. 4; *see also id.* ¶ 8.) Plaintiff then contracted with CSS Investments, Inc. ("CSS") to purchase the PPE, which in turn contracted with Artic Health Solutions Viet Nam Co., Ltd. ("Artic Health"). (Luttrell Decl., Ex. A.) Arctic Health deposited the money with its bank, Saigon Joint Stock Commercial Bank ("Saigon Bank"). (*Id.*) Ultimately, Plaintiff was unable to provide the PPE to Natural Essentials, and although it was able to refund some of the money back to Defendant, it allegedly still owes Natural Essentials $1,610,000. (Compl. ¶¶ 48, 54–57.)

**B.    PROCEDURAL BACKGROUND**

Plaintiff initiated this action by filing a complaint against Natural Essentials, CSS, Arctic Health, and Saigon Bank in the New Jersey Superior Court. (*See* ECF No. 1.) Natural Essentials removed the case to this Court on January 19, 2022. (*Id.*) Natural Essentials then filed a motion to compel arbitration that the Court denied without prejudice, ordering the parties to conduct limited discovery on the issue of arbitrability. (ECF Nos. 4, 16, 17.) In its prior opinion, the Court advised Defendant to file any renewed motion to compel following discovery. ("Prior Op.," ECF

---

[6] The parties contracted for $2,350,000 worth of PPE and Natural Essentials paid $2,349,997. (Pellegrino Decl., Ex. 4.)

3

No. 16 at 7.) Defendant filed the instant Motion on January 23, 2024, seeking to compel arbitration and seeking sanctions against Plaintiff. (ECF No. 57.)

## II.     JURISDICTION

The Court has subject matter jurisdiction over the claims in this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

## III.    LEGAL STANDARD

"The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts are authorized to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Additionally, under § 3 of the FAA, parties may "apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). To conduct this inquiry, the court shall apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

4

IV.  **DISCUSSION**

In determining whether a valid arbitration agreement exists, a court must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review.  *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015).  The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint[.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted).  However,

> [w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citations omitted).  In such circumstances, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." *Ross v. CACH, LLC*, Civ. No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015).  Afterwards, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a [Rule 56,] summary judgment standard." *Guidotti*, 716 F.3d at 776.

Here, the Court will analyze the Motion under a Rule 56 standard, given that the parties have engaged in limited discovery on the issue of arbitrability as the Court instructed. *See id.* at 774.

Defendant argues that the Uniform Commercial Code ("UCC") requires the Court to consider the terms and conditions attached to the First PO as part of the parties' final agreement. (Moving Br. at 2–3.)  Specifically, Defendant construes the First PO—which did contain an

arbitration clause in its attached terms and conditions—as an offer whose terms were accepted by Plaintiff and later incorporated into the Second PO. (*Id.* at 8–9, 12.) Defendant emphasizes that both POs arose from negotiations throughout July 2020 between Defendant and Dolan, on Plaintiff's behalf, and that Plaintiff makes no claim that anyone other than Dolan spoke for it at the time. (*Id.* at 4, 6, 12–13.) Defendant asserts that Dolan thus had apparent authority under agency law principles to bind Plaintiff to the First PO's terms, including the arbitration clause.[7] (*Id.* at 12–16.)

Plaintiff first argues that Defendant's Motion must be dismissed because it does not provide a statement of undisputed material facts pursuant to Local Civil Rule 56.1(a). (Opp'n Br. at 8–9.) Next, Plaintiff argues that disputed issues of material fact make summary judgment improper. (*Id.* at 9.) Specifically, Plaintiff denies that it agreed to arbitrate and therefore cannot be bound by the arbitration clause—it maintains that the only enforceable agreement is the Second PO, which did not incorporate the terms of the First PO. (*Id.* at 10–13, 15–18.) Plaintiff further argues that Dolan did not have apparent authority to act on Plaintiff's behalf because neither Dolan nor Giamanco, as the alleged principal in the relationship, ever indicated that there was agency, and Defendant incorrectly assumed that there was without inquiring. (*Id.* at 18–19.)

A.   **CONTENTS OF THE PARTIES' AGREEMENT**

First, the Court considers whether the parties' final agreement includes the terms and conditions of the First PO, including its arbitration provision. Pursuant to UCC § 2-207(1), after a buyer receives an offer for the sale of goods from a seller, a "definite and seasonable acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance" of that offer, even if the terms of the offer and acceptance are not identical. Unif. Com. Code § 2-207(1).

---

[7] Defendant alternatively argues that Plaintiff ratified and thus agreed to be bound by Dolan's conduct. (Moving Br. at 16–17.)

In applying UCC § 2-207, the Third Circuit has made clear that "[w]here a buyer makes a definite and seasonable expression of acceptance of a seller's offer, a contract is formed *on the seller's terms*." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) (emphasis added). Upon acceptance of the seller's offer, the final form of the parties' agreement will incorporate by reference the seller's terms, including an arbitration provision, so long as "the underlying contract makes clear reference to a separate document [with the seller's terms], the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Id.*

The facts in *Standard Bent Glass* are almost identical to the facts in this case: the seller in that case sent a standard sales agreement to the buyer, which included a reference to arbitration. *Id.* That communication constituted an offer under UCC § 2-207, which the buyer then seasonably accepted by responding with its own agreement. *Id.* The buyer's acceptance "did not alter or respond to" the arbitration clause from the seller's offer; nonetheless, the Court of Appeals affirmed that the buyer's failure to object to the arbitration terms, absent undue surprise or hardship, made those terms part of the parties' final contractual agreement. *Id.*

Here, the following facts are undisputed,[8] (*see* First PO; Cover Email; Second PO): Plaintiff is the seller of PPE. Plaintiff first reached out to Defendant, through Dolan, with the First PO, which the Court construes as an offer to contract. Defendant, the buyer, responded the next day with the Second PO, which the Court construes as a seasonable acceptance of Plaintiff's offer. The Second PO, like the acceptance in *Standard Bent Glass*, did not comment on the arbitration

---

[8] The Court rejects Plaintiff's argument that the Court should deny Defendant's Motion simply because it failed to submit a statement of undisputed material facts. Even where a motion is entirely unopposed, Rule 56 requires the Court to satisfy itself that summary judgment is proper because there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(e)(3); *see Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Because the record is relatively brief, the Court exercises its discretion to proceed to the merits by gleaning the disputed and undisputed facts from the parties' declarations accompanying the Motion.

provision of the First PO or even include its own, conflicting terms. The arbitration provision was clearly attached to the First PO, and no facts suggest that Plaintiff would suffer from undue surprise or hardship by complying with its terms,[9] especially in light of the fact that the arbitration provision came not from Defendant, but from Plaintiff's own original offer. The Court therefore finds—consistent with *Standard Bent Glass* as binding authority—that the terms of Plaintiff's First PO—including the arbitration provision—govern the parties' final agreement, as they are incorporated by reference. *Standard Bent* Glass, 333 F.3d at 447–48.[10]

## B.  AGENCY

Next, the Court considers whether Dolan bound Plaintiff by his actions as an apparent agent. A person who is not an "actual agent" of a principal may still be an agent through apparent authority. *Sylvan Learning Sys., Inc. v. Gordon*, 135 F. Supp. 2d 529, 545 (D.N.J. 2000). Apparent authority arises when the principal "causes persons with whom the agent deals to reasonably believe that the agent has authority." *Id.* Specifically, it must be shown that: 1) the conduct of the principal created the appearance of authority, and 2) a third party "reasonably relied on the apparent authority of the agent to act for a principal." *Id.*

Here, it is undisputed that: Giamanco had an oral agreement with Dolan whereby Dolan was to procure PPE for resale for the benefit of Plaintiff, (Giamanco Decl. ¶¶ 4–6; Dolan Decl.

---

[9] Evidence that a lead executive of a company never received a copy of an arbitration provision is insufficient to constitute surprise or hardship. *Standard Bent Glass*, 333 F.3d at 448. Therefore, the fact that Giamanco may not have been unaware of the arbitration provision is irrelevant to the Court's analysis.

[10] The Court rejects Plaintiff's attempts to distinguish *Standard Bent Glass* from this case. For example, Plaintiff argues that, unlike in our case, the offer in *Standard Bent Glass* "specifically made its acceptance conditional upon the applicability of additional terms and conditions which contained an arbitration clause." (Opp'n Br. at 19.) That is not a difference from our case, but a similarity: the First PO explicitly stated on its first page that it was subject to the attached terms and conditions, which included an arbitration clause. (First PO at 1.) Plaintiff additionally argues that *Standard Bent Glass* is distinguishable because it involves only one purchase order. (Moving Br. at 19.) Again, that is not true. Both case's transactions involved an offer from a seller and a subsequent acceptance by a buyer. Lastly, Plaintiff's argument that it is "unnecessary and unfounded to look outside the four corners of the signed purchase order" in this case, namely the Second PO, is unavailing. (*Id.*) As *Standard Bent Glass* explains, when a seller's offer is accepted under UCC § 2-207, the terms that govern sometimes do fall outside the four corners of the final form agreement, as they are incorporated by reference.

8

¶¶ 2, 4, 7–8); Pellegrino, who negotiated the POs on behalf of Defendant in July 2020, only communicated with Dolan during said negotiations, including receiving an email from Dolan about the price terms of the parties' agreement and anticipated profit-sharing between Plaintiff and Defendant, (*see* Cover Email; Pellegrino Decl. ¶ 5; Giamanco Decl. ¶ 10); and both POs listed Plaintiff as the seller and Defendant as the buyer, (*see* First PO; Second PO).

Based on these undisputed facts, the Court finds that Pellegrino, a third party, was reasonable to rely on the apparent authority of Dolan to act as Plaintiff's agent, as he only ever communicated with Dolan during the negotiations. (Pellegrino Decl. ¶ 5; Giamanco Decl. ¶ 10.) The POs were clearly for a purchase that was to occur between Plaintiff—the only listed seller—and Defendant; Dolan or Dolan's company, Maho, are mentioned nowhere on the POs. (*See* First PO; Second PO.) Moreover, profit-sharing with Plaintiff was contemplated from the transactions. (Cover Email.) If there were any limitations to the authority granted to Dolan by Plaintiff to act on its behalf, the record reveals none and they were certainly not made known to Defendant in any event. *See Union Tr. Co. of Md. v. Wakefern Food Corp.*, Civ. No. 86-728, 1988 WL 113354, at *4 (D.N.J. Oct. 5, 1988) (an agent's acts bind the principal unless limitations to the agent's authority are made known to the person doing business with the agent).[11]

The Court further finds that the conduct of Plaintiff, and only the conduct of Plaintiff, created the appearance of authority by retaining Dolan to procure PPE contracts on its behalf. Plaintiff argues that Dolan engaged in the PO negotiations solely for his own benefit, but this contention is negated by the undisputed evidence, which shows that the plan as represented to

---

[11] The Court rejects Plaintiff's argument that Defendant's failure to inquire about Dolan's precise relationship with Plaintiff somehow affects the agency analysis. Plaintiff fails to provide any case law in support of this argument and this Court sees no reason to impose such an obligation upon Defendant. (Opp'n Br. at 19.)

Defendant in the Cover Email was for Plaintiff to share in the profits too.  (*See* Cover Email).  And again, both POs list Plaintiff as the seller, not Dolan or Maho.  (*See* First PO; Second PO.)

Therefore, the Court finds that Dolan acted with apparent authority when he entered the POs with Natural Essentials, and Plaintiff is bound by that conduct.  *Sylvan Learning Sys., Inc*, 135 F. Supp. 2d at 545.[12]  The Court will grant Defendant's Motion with respect to its request to compel arbitration.

       **C.**       **SANCTIONS**

Lastly, Defendant argues that sanctions are appropriate because Plaintiff's conduct has been egregious.  (Moving Br. at 17–19.)  Defendant submits that Plaintiff acted in bad faith by bringing this lawsuit solely for the purpose of delaying arbitration, as evidenced by Plaintiff's failure to prosecute its claims against the other named defendants in this action.  (*Id.* at 19.)  Plaintiff, on the other hand, insists that it has acted in good faith, and therefore that sanctions are not warranted.  (Opp'n Br. at 21–23.)

A Court has the inherent power to impose sanctions in its discretion "when an attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 181 (3d Cir. 2002) (internal quotation marks omitted).  Here, while the Court notes Defendant's frustration with the sequence of events as they have unfolded, the Court finds that sanctions are not warranted.  As Plaintiff's attorney explains, any delays in the case were not intentional,[13] and a significant contributor to this case being drawn out was the COVID-19 pandemic.  (Opp'n Br. at 22–23.)  The record before this Court lacks

---

[12] Given that the Court finds Dolan acted on Plaintiff's behalf as an apparent agent, it need not address Defendant's alternative argument based on ratification.

[13] The Luttrell Declaration in fact gives an explanation for why in good faith Plaintiff's case took longer than expected to prosecute.  (Luttrell Decl. ¶ 3.)

evidence demonstrating that Plaintiff's attorney acted vexatiously, wantonly, or for oppressive reasons, and therefore, the Court will deny Defendant's request for sanctions.

## V.     CONCLUSION

For the reasons set forth above, Defendant's Renewed Motion to Compel Arbitration and for Sanctions will be GRANTED IN PART and DENIED IN PART.  An appropriate order will follow.

Date: **August 30, 2024**

> s/ Zahid N. Quraishi
> **ZAHID N. QURAISHI**
> **UNITED STATES DISTRICT JUDGE**